1  Law Office of Steven P. Scandura
   STEVEN P. SCANDURA (SBN 153796)
2  1601 N. Sepulveda Blvd. #730
   Manhattan Beach, CA 90266-5133
3  Telephone: (310) 473-6300
   Fax: (626) 289-8209
4
5  Attorney for Plaintiffs,
   ROBERT LEE and BLANCHE FENG
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  ROBERT LEE and BLANCHE        )   CASE NO. **CV06-4731 AHM (Jcx)**
    FENG, Distributors,           )
12                                )   FIRST AMENDED COMPLAINT
                                  )   FOR:
13        Plaintiffs,             )   1)  BREACH OF CONTRACT;
                                  )   2)  BREACH OF THE IMPLIED
14  vs.                           )       COVENANT OF GOOD FAITH
                                  )       AND FAIR DEALING;
15  STEVE CHEN, GRACE HE,         )   3)  INTENTIONAL
    VICTOR ZHU, AMKEY, INC.,      )       MISREPRESENTATION;
16  THE COMPANY, And Does 1 to    )   4)  NEGLIGENT
    50, Inclusive,                )       MISREPRESENTATION;
17                                )   5)  WIRE FRAUD IN VIOLATION
         Defendants.              )       OF THE "RICO" ACT; and
18  _____ )   6)  BREACH OF FIDUCIARY
                                  )       DUTY
19

20                            INTRODUCTION

21        1.  This case is about Amkey, Inc., a multi-level marketing company,

22  improperly and illegally breaking its own rules to personally benefit its

23  president and certain favored distributors within the organization. When

24  plaintiffs discovered the wrongful conduct and demanded redress, Amkey, Inc.,

25  through its directors, retaliated by discontinuing payments and completely

26  locking plaintiffs out of the business they had invested their time, money and

27  energy into, without any reason, explanation, or notice whatsoever.

28  //

                          First Amended Complaint
                                   -1-



### JURISDICTION

2. Jurisdiction is proper in the Central Judicial District of the Superior Court of Los Angeles, State of California, where Plaintiffs make claims under 18 U.S.C. § 1961, et seq., and where defendants Steve Chen, Victor Zhu, and Amkey, Inc., removed Plaintiffs' lawsuit from the Superior Court of the State of California, County of Los Angeles, Pasadena Courthouse to this Court pursuant to 28 U.S.C. § 1441(b).

### THE PLAINTIFFS

3. Plaintiffs Robert Lee and Blanche Feng are individuals living in the State of California.

### THE DEFENDANTS

4. Plaintiffs are informed and believe, and based thereon allege, that defendant Amkey, Inc., (hereinafter "AMKEY") is an active California corporation, doing business in the State of California, and located at 12801 Schabarum Ave., Irwindale, CA 91708. Plaintiffs are further informed and believe, and based thereon allege, that AMKEY conducts business throughout the United States and internationally.

5. Plaintiffs are informed and believe, and thereon allege, that defendant Steve Chen (hereinafter "CHEN") is CEO, President, and owner of AMKEY. Plaintiffs are informed and believe and thereon allege, that CHEN has a business address of 1111 Corporate Center Dr., #105, Monterey Park, CA 91754. A true and correct copy of CHEN's profile found in the AMKEY website, http://web.amkey.net/env/company3.asp, is attached hereto as Exhibit "A".

6. Plaintiffs are informed and believe, and thereon allege, that defendant Victor Zhu (hereinafter "ZHU"), is the Vice President of AMKEY, and has a business address of 1111 Corporate Center Dr., #105, Monterey Park, CA 91754.

1    7. Plaintiffs are informed and believe, and thereon allege, that defendant
2    Grace He ("HE") was at all times relevant to this First Amended Complaint, the
3    Chief Financial Officer of AMKEY. Plaintiff is further informed and believes
4    and thereon alleges that HE has a business address of 12801 Schabarum Ave.,
5    Irwindale, CA 91708.

6    8. The true names and capacities, whether individual, corporate,
7    associate or otherwise of defendants named herein as DOES 1 through 50,
8    inclusive, are unknown to Plaintiffs who, therefore, sues said defendants by
9    such fictitious names, and Plaintiffs will ask leave of Court to amend this
10   Complaint when their true names and capacities have been ascertained.
11   Plaintiffs are informed and believes and thereon allege, that each of the
12   defendants designated as a DOE is a fraudulent transferee or transferor, or
13   conspirator, or is responsible, negligently, or in some actionable manner for the
14   events, and happenings herein referred to and caused the injuries and damages
15   proximately thereby to Plaintiffs as herein alleges either through the defendants'
16   own conduct or through the conduct of their agents, servants, and/or employees,
17   or, through the ownership, lease, sale of the instrumentality causing the injury
18   or in some other actionable manner.

19   9. Plaintiffs are informed and believe, and thereon allege, that at all
20   times herein mentioned, defendants, and each of them, were the agents, servants
21   and employees of every other defendant, and the acts of each defendant as
22   herein alleged were performed within the course and scope of that agency,
23   service or employments and with the knowledge and consent of the remaining
24   defendant(s) and each of them. Hereinafter, all defendants including Doe
25   Defendants, will sometimes be referred to collectively as "DEFENDANTS".
26   //
27   //
28   //

1 | GENERAL ALLEGATIONS

2     10. As it describes itself in its "Company Introduction" found on its
3 website www.amkey.net, AMKEY, is the "ultimate internet-based direct
4 marketing company specializing in the research and development,
5 manufacturing, and marketing of natural, high tech healthcare products".
6 AMKEY conducts its internet-based business all over the country and even
7 outside the United States.

8     11. Plaintiffs are informed and believe, and thereon allege, that AMKEY
9 sells its products, primarily nutritional supplements, strictly through its
10 distributors and not in retail outlets.

11     12. Plaintiffs are informed and believe, and thereon allege, that
12 defendant AMKEY has a "Binary with Single Track System" compensation
13 plan. Please see a true and correct copy of a document titled "The State of the
14 Art Compensation Plan", dated September 28, 2005, found on AMKEY's
15 website, www. amkey.net, attached hereto as Exhibit "B". AMKEY's "binary"
16 compensation structure provides that each distributor must recruit two
17 distributors underneath him before he becomes a "qualified" distributor. No
18 distributor may have more than two distributors directly under him. After a
19 distributor sponsors his first two distributors, any additional distributors he
20 recruits will be placed with another distributor that does not already have two
21 distributors below him so that the entire organization maintains its binary
22 structure. All things being equal, the higher a distributor is in the entire
23 AMKEY structure, the greater that distributor's downline compensation.

24     13. Plaintiffs are informed and believe and allege thereon that there are
25 two independent "trees" in AMKEY's binary structure. Plaintiffs are informed
26 and believe and thereon allege, that one tree is headed by Cissy Zhu (hereinafter
27 "CISSY'S TREE"), and that the second tree is headed by Jennifer Wang
28 (hereinafter "JENNIFER'S TREE").

1       14. AMKEY distributors receive income from three different sources:
2 "(1) Retail profits; (2) Organization Development Commissions (Paid Weekly);
3 and (3) Global Bonuses". A true and correct copy of a document titled "Three
4 Ways to Generate Income" found on AMKEY's website, www.amkey.net, is
5 attached hereto as Exhibit "C". Thus, a significant, and sometimes the most
6 significant portion of an AMKEY distributor's compensation is based on his or
7 her "downline", that is, the two distributors he or she recruited, the two
8 distributors each of those two distributors recruited, and so on.

9                          BREACH OF CONTRACT

10                          (Against All Defendants)

11       15. Plaintiffs incorporate by reference paragraphs 1-14, inclusive, of this
12 First Amended Complaint, as though fully set forth herein.

13       16. On or about December 2004, Plaintiff Robert Lee and, shortly
14 thereafter Plaintiff Blanche Feng (as a recruit of Robert Lee), entered into
15 identical contracts with defendant AMKEY to become distributors of AMKEY,
16 (hereinafter "CONTRACT"), by filling out an "Independent Distributor
17 Application" downloaded from AMKEY's website. Please see a true and
18 correct copy of an Independent Distributor Application, identical or similar to
19 the application filled out by Plaintiffs, attached hereto as Exhibit "D".

20       17. Plaintiffs' applications were accepted by AMKEY, and they became
21 distributors of AMKEY under JENNIFER'S TREE. Please see a true and
22 correct copy of a confirmation e-mail sent to Robert Lee attached hereto as
23 Exhibit "E" and true and correct copy of an AMKEY document reflecting
24 Blanche Feng's status as a "General Manager Distributor", attached hereto as
25 Exhibit "F".

26       18. Under the CONTRACT, Plaintiffs each paid AMKEY a start-up fee
27 of over $500.00, which covered the annual service fee necessary to become
28 AMKEY general manager distributors, as well as six bottles of AMKEY brand

1  nutritional supplements that they would sell and use as promotional tools to
2  recruit new distributors underneath them.

3      19.  Under the CONTRACT, DEFENDANTS further promised, among
4  other things, the following terms:

5          (1.) Distributors would get an online "office" and their own
6  personal website, as well as support from AMKEY's online back office to
7  manage their own accounts. A true and correct copy of an AMKEY document
8  describing Distributor benefits, dated September 28, 2005, is attached hereto as
9  Exhibit "G";

10         (2.) Compensation from three different sources:  retail sales;
11  weekly organization development commissions; and global bonuses. See
12  Exhibit C;

13         (3.) Guaranteed payments: "[a]s long as you maintain a minimal
14  qualification, your group volume is preserved indefinitely. There is no
15  inventory required while you are expanding your business worldwide." A true
16  and correct copy of "The State of the Art Compensation Plan" is attached hereto
17  as Exhibit Please see Exhibit "H", paragraph 7;

18         (4.) Commissions paid weekly. See Exhibit C, paragraph 4;

19         (5.) "Transferring sponsorship. A transfer request, without group,
20  will be considered with the notarized signatures of consent from the five
21  immediate uplines. A transfer request, with group, will be considered with the
22  notarized signatures of consent from the five immediate uplines, and the
23  notarized signatures of consent of each downline wishing to be included in the
24  transfer. All transfers of sponsorship require the final approval of AMKEY,
25  whose decision will take into account the overall good of the AMKEY. An
26  administrative fee may be charged for changing the corporate records". Please
27  see a true and correct copy of this term, found in AMKEY's "AMKEY, Inc.
28  Statement of Policies and Procedures" attached hereto as Exhibit "I".

1           (6.) "Involuntary Termination. A Distributor may be terminated or

2  suspended for violating any of the terms of this Agreement. AMKEY may

3  suspend the Distributorship of a violating Distributor upon serving notice of

4  cause, citing evidence of the violation. Should no response be provided by the

5  Distributor within 15 days, termination will become effective upon final

6  decision of AMKEY. Notice of the decision will be sent by certified mail to the

7  violating Distributor's address of record..." See Exhibit I, paragraph 22.

8      20.  Plaintiffs have performed all their obligations under the

9  CONTRACT. From on or about December 2004 to on or about August 2005,

10  Plaintiffs Blanche Feng and Robert Lee were dedicated, active and motivated

11  members of AMKEY, selling products and recruiting new distributors for

12  JENNIFER'S TREE.

13      21.  From on or about December 2004 to on or about August 2005, both

14  Plaintiffs' incomes from AMKEY were steadily increasing due to their efforts

15  in selling AMKEY products and recruiting more distributors for their downline.

16      22.  By on or about August 2005, Plaintiff Robert Lee had approximately

17  150 distributors in his downline, and his recruit, Plaintiff Blanche Feng, had

18  approximately 100 distributors in her downline.

19      23.  By on or about August 2005, Plaintiff Robert Lee was making

20  approximately $1,800.00 each month from AMKEY, and Blanche Feng was

21  making approximately $550.00 a month. Because of the naturally growing

22  number of distributors in their downline, Plaintiffs had every reason to believe

23  that their AMKEY incomes would continue to grow.

24      24.  On or about August 2005, Lydia Li, aka Xiao Yan Li,(hereinafter

25  "LYDIA") approached Blanche Feng, asking her to move, along with her

26  downline, from JENNIFER'S TREE to CISSY'S TREE. LYDIA's invitation

27  shocked and stunned Blanche Feng, who asked how such a move could be done.

28  LYDIA responded only that she guaranteed that it could be done and Blanche

1  Feng only needed to agree to the move and it would be done.

2  25. Plaintiffs are informed and believe, and based thereon allege, that
3  Cissy Zhu, a woman commonly known by AMKEY distributors to be CHEN's
4  mistress, stood to benefit most from any transfer from JENNIFER'S TREE to
5  CISSY'S TREE. Plaintiffs understood that Ms. Zhu was raiding JENNIFER'S
6  TREE, specifically targeting successful distributors, like Blanche Feng and
7  Robert Lee. LYDIA in particular, who was a personal recruit of Plaintiff, had
8  proven her talent at AMKEY such that in addition to being an AMKEY
9  distributor, was even hired as an AMKEY spokeswoman.

10  26. Plaintiffs repeatedly refused to move to CISSY'S TREE.

11  27. On or about August 2005, Plaintiffs discovered that LYDIA, along
12  with her downline, had in fact already joined CISSY'S TREE on or about July
13  2005.

14  28. Plaintiffs are informed and believe, and based thereon allege, that
15  DEFENDANTS failed to get the notarized consents and signatures from the five
16  direct uplines of this improperly transferred branch of JENNIFER'S TREE
17  when they encouraged, authorized, condoned, and/or executed the transfer, and
18  thus breached the CONTRACT.

19  29. On or about September 2005, Plaintiffs informed DEFENDANTS of
20  the impropriety of this transfer and demanded that they discuss the transfer so
21  that it could be corrected. DEFENDANTS promised Plaintiffs that they would
22  get back to them in "three weeks" with a written statement and resolution of the
23  matter, but never did.

24  30. Despite AMKEY's promise to pay its distributors under the
25  CONTRACT, AMKEY never sent Plaintiffs another check after September
26  2005, and thus breached the CONTRACT.

27  //

28  //

1    31.  On or about October 2005, Plaintiffs tried to log on to their AMKEY
2    accounts–the virtual home base of their distributorship– and found that their
3    passwords had been changed.  Plaintiffs had been locked out by
4    DEFENDANTS and deprived of their online "office", in breach of the
5    CONTRACT.

6    32.  When DEFENDANTS failed to pay Plaintiffs what was due to them
7    as AMKEY distributors and locked Plaintiffs out of their online office,
8    AMKEY effectively terminated Plaintiffs distributorships in contravention of
9    the CONTRACT's termination policies and procedures, and thus breached the
10   CONTRACT.

11                    BREACH OF THE IMPLIED COVENANT OF
12                    GOOD FAITH AND FAIR DEALING
13                (Against Defendants Amkey, Inc., and Steve Chen)

14   33.  Plaintiffs incorporate by reference paragraphs 1-32, inclusive, of this
15   First Amended Complaint, as though fully set forth herein.

16   34.  On or about December 2004, Plaintiffs Blanche Feng and Robert
17   Lee entered into the CONTRACT.  See Exhibit I.

18   35.  Plaintiff is informed and believes and thereon alleges that starting on
19   or about July 2005 and continuing to the present, DEFENDANTS engaged in a
20   series of acts violative of the CONTRACT.  By undertaking this series of acts,
21   DEFENDANTS injured Plaintiffs' right to receive the benefits of the
22   CONTRACT, and breached the implied covenant of good faith and fair dealing.
23   //
24   //
25   //
26   //
27   //
28   //

## INTENTIONAL MISREPRESENTATION

(Against Defendants Amkey, Inc., and Steve Chen)

36.  Plaintiffs incorporate by reference paragraphs 1 - 35, inclusive, of this First Amended Complaint, as though fully set forth herein.

37.  On or about December 2004, Plaintiffs and defendants AMKEY and CHEN entered into the CONTRACT.

38.  At the time Plaintiffs CHEN, and AMKEY entered into the CONTRACT, CHEN and AMKEY represented the following non-exclusive list of facts: that once Plaintiffs paid their registrations fees and were accepted as AMKEY distributors, CHEN and AMKEY would support their distributorship, maintain Plaintiffs' online office, pay Plaintiffs for whatever sales income, weekly commissions, and global bonuses they earned; that a distributor would first have to get the notarized signatures of its five immediate uplines prior to changing positions in a tree; that CHEN and AMKEY would only terminate Plaintiffs' distributorships if Plaintiffs were in violation of the CONTRACT, and *after* CHEN and AMKEY provided written notice and evidence.  See Exhibit I.

39.  These representations were false.  AMKEY and CHEN knew these representations were false when they made them, or made these representations recklessly and without regard for their truth.

40.  AMKEY and CHEN made these representations with the intention that Plaintiffs rely on them.

41.  Plaintiffs reasonably relied on CHEN's and AMKEY's representations when they joined AMKEY as distributors, and worked very hard selling AMKEY products and recruiting new distributors.

42.  Plaintiffs were harmed by these representations.

43.  Plaintiffs' reliance on these representations was a substantial factor in the harm caused to them.

1                NEGLIGENT MISREPRESENTATION

2           (Against Defendants Amkey, Inc., and Steve Chen)

3       44. Plaintiffs incorporate by reference paragraphs 1 - 43, inclusive, of

4 this First Amended Complaint, as though fully set forth herein.

5       45. On or about December 2004, Plaintiffs and defendants AMKEY and

6 CHEN entered into the CONTRACT.

7       46. At the time Plaintiffs CHEN, and AMKEY entered into the

8 CONTRACT, CHEN and AMKEY represented the following non-exclusive list

9 of facts: that once Plaintiffs paid their registrations fees and were accepted as

10 AMKEY distributors, CHEN and AMKEY would support their distributorship,

11 maintain Plaintiffs' online office, pay Plaintiffs for whatever sales income,

12 weekly commissions, and global bonuses they earned; that a distributor would

13 first have to get the notarized signatures of its five immediate uplines prior to

14 changing positions in a tree; that CHEN and AMKEY would only terminate

15 Plaintiffs' distributorships if Plaintiffs were in violation of the CONTRACT,

16 *after* CHEN and AMKEY provided written notice and evidence. See Exhibit I.

17       47. These representations were false.

18       48. AMKEY and CHEN had no reasonable grounds for believing these

19 representations were true when they made them.

20       49. AMKEY and CHEN made these representations with the intention

21 that Plaintiffs would rely on them.

22       50. Plaintiffs reasonably relied on CHEN's and AMKEY's

23 representations when they joined AMKEY as distributors, and worked very

24 hard selling AMKEY products and recruiting new distributors.

25       51. Plaintiffs were harmed by these representations.

26       52. Plaintiffs' reliance on the representations were a substantial factor in

27 causing their harm.

28 //

1    WIRE FRAUD IN VIOLATION OF THE RACKETEER INFLUENCED AND

2    CORRUPT ORGANIZATIONS ACT ("RICO")

3    (Against All Defendants)

4    53. Plaintiffs incorporate by reference paragraphs 1 - 52, inclusive, of

5    this First Amended Complaint, as though fully set forth herein.

6    54. Plaintiffs are informed and believe and thereon allege, that from on

7    or about December 2004 to the present, DEFENDANTS unlawfully received

8    income derived directly and indirectly from racketeering activity in violation of

9    18 U.S.C. § 1962(a) .

10   55. Plaintiffs are informed and believe and thereon allege, that from on

11   or about December 2004 to the present, DEFENDANTS, through a pattern of

12   racketeering activity, unlawfully maintained, directly and indirectly, an interest

13   in or control of an enterprise that engaged in interstate commerce in violation of

14   18 U.S.C. § 1962(b), when DEFENDANTS owned and operated AMKEY.

15   56. Plaintiffs are informed and believe and thereon allege, that from on

16   or about December 2004 to the present, DEFENDANTS, through a pattern of

17   racketeering activity, unlawfully were employed by or were associated with an

18   enterprise engaged in interstate commerce in violation of 18 U.S.C. § 1962(c) .

19   57. Plaintiffs are informed and believe and thereon allege, that

20   DEFENDANTS engaged in racketeering activity, specifically, a scheme to

21   defraud by use of wire violative of Title 18 U.S.C. § 1343.

22   58. Plaintiffs are informed and believe and thereon allege, that

23   DEFENDANTS planned to deceive Plaintiffs into entering the CONTRACT

24   and continuing to work diligently as distributors under the CONTRACT, by

25   falsely promising that Plaintiffs' work would be fairly compensated as

26   described under CONTRACT and that DEFENDANTS would follow its own

27   policies and procedures as described in the CONTRACT.

28   59. Plaintiffs are informed and believe and thereon allege, that

1    DEFENDANTS executed and furthered their scheme to defraud by use of
2    electronic communication. Specifically, DEFENDANTS promoted themselves
3    on their internet website, www.amkey.net, posting the terms of the
4    CONTRACT thereon, and using the internet website as a hub for many if not
5    most AMKEY activities.

6                        BREACH OF FIDUCIARY DUTY

7                          (Against All Defendants)

8         60.   Plaintiffs incorporate by reference paragraphs 1 - 60, inclusive, of
9    this First Amended Complaint, as though fully set forth herein.

10        61.   Plaintiffs are informed and believe and thereon allege, that
11   DEFENDANTS had a fiduciary duty to protect Plaintiffs' best interests and
12   investment under the CONTRACT.

13        62.   Plaintiffs are informed and believe, and thereon allege, that
14   DEFENDANTS negligently condoned, authorized, facilitated, or in some
15   manner participated in allowing Plaintiffs' downline to join CISSY'S TREE.

16        63.   Plaintiffs are informed and believe, and thereon allege, that
17   DEFENDANTS negligently permitted Plaintiffs' downline to improperly
18   remain in CISSY'S TREE after Plaintiffs informed DEFENDANTS that their
19   downline was improperly moved to CISSY'S TREE in violation of the
20   CONTRACT.

21        64.   But for DEFENDANTS' negligence, Plaintiffs would not have lost
22   income from their now inactive downlines.

23        65.   DEFENDANTS' negligence proximately caused Plaintiffs' harm in
24   that lost income to uplines is a natural and expected harm caused by raiding a
25   distributor's downlines.

26        66.   Plaintiffs have lost income as a result of DEFENDANTS'
27   negligence.

28   //

1    WHEREFORE, Plaintiffs prays for judgment against DEFENDANTS,
2  and each of them, as follows:
3  On the First and Second Causes of Action:
4    1.    For compensatory damages in an amount to be determined at trial,
5  and in an amount sufficient to have a deterrent effect on DEFENDANTS;
6    2.    For interest thereon at the highest rate permitted by law;
7    3.    For costs of suit;
8  On the Third Cause of Action:
9    1.    For compensatory damages in an amount to be determined at trial,
10 and in an amount sufficient to have a deterrent effect on DEFENDANTS;
11   2.    For interest thereon at the highest rate permitted by law;
12   3.    For costs of suit;
13   4.    For punitive damages in an amount commensurate with the
14 DEFENDANTS' wealth;
15 On the Fourth Cause of Action:
16   1.    For compensatory damages in an amount to be determined at trial,
17 and in an amount sufficient to have a deterrent effect on DEFENDANTS;
18   2.    For interest thereon at the highest rate permitted by law;
19   3.    For costs of suit;
20 On the Fifth Cause of Action:
21   1.    For compensatory damages in an amount to be determined at trial,
22 and in an amount sufficient to have a deterrent effect on DEFENDANTS;
23   2.    For interest thereon at the highest rate permitted by law;
24   3.    For costs of suit;
25   4.    For reasonable attorney's fees;
26   5.    For punitive damages in an amount commensurate with the
27 DEFENDANTS' wealth;
28 //

On the Sixth Cause of Action:

1.    For compensatory damages in an amount to be determined at trial, and in an amount sufficient to have a deterrent effect on DEFENDANTS;

2.    For interest thereon at the highest rate permitted by law; and

3.    For costs of suit.

Dated: September 22, 2006                Law Offices of Steven P. Scandura

Steven P. Scandura, Esq.
1641 W. Main Street, #401
Alhambra, CA 91801
Telephone (626) 289-8208
Facsimile (626) 289-8209
Attorney for Plaintiffs

EXHIBIT A



*Amkey*

Set as homepage    Member ID    Password    [ Login ]




## Our Professional Team

- Company News

- Company Intro

- Our Mission

- Company Structure

- Professional Team

**Mr. Steve Chen, CEO Amkey, Inc.**



- 20-year track record of pioneering, planning, and exemplary leadership in business environments, including but not limited to, China Unicom, a major telecommunications company listed on the New York Stock Exchange.
- Launched in 1993, China Unicom successfully developed over 100 million subscribers in 10 years.
- In 2000, China Unicom went public in the United States, and raised 5.7 billion dollars in the US capital market. It was one of the biggest initial public offerings (IPOs) on Wall Street.
- Excellent reputation in the global communication and capital markets.
- His valuable and practical experience contributes to the solid growth and rapid expansion of Amkey Inc.

**EXHIBIT B**



Home| Language| Company| Compensation| Products| Backoffices| Services

Member ID  Password : Login

## COMPENSATION

» Compensation Plan
» Distributor
» Supervisory Distributor
» Three Ways to Earn Income
» Active and Commision

### The State of the Art Compensation Plan

Amkey's unique compensation plan is not only simple, but also personalized. It is the result of a group of senior professionals exhausting their years of practical experience, analyzing and studying various plans used by other companies. This plan offers everyone an excellent and truly free-enterprising opportunity. This unique plan is called Binary with Single Track System, BSTS for short.



Special Characteristic of the Plan:

1. Reasonable retail profit: Earn 25-50%.

2. The easiest Development Bonus: Earn $25 every time you have accumulated 100 BV each to your left and right organization, paid weekly.

3. Guaranteed Global Bonus: every qualified distributor Participates in the Global Bonus even if you have only developed on one side, paid monthly.

4. Simple and Fair: Achievable and tangible.

5. Part-time career without pressure: Qualify with only 100 BV product purchase.

6. Quick and lucrative multiple bonuses: Bonuses paid daily, weekly, and monthly.

7. Unlimited worldwide pay levels: Group volume accumulates to infinite levels. As long as you maintain a minimal qualification, your group volume is preserved indefinitely. There is no inventory required while you are expanding your business worldwide.

8. Maximum paid out: 65% of company's worldwide business revenue.

Join Amkey, choose Amkey as your partner, and you will receive an unprecedented internet-base marketing mechanism to realize your dream.

Note: BV = Business volume

welcome to amkey

   Set as homepage    Member ID         Password                



Home| Language| Company| Compensation| Products| Backoffice| Service

## Three Ways to Generate Income

| Compensation Plan |
| --- |
| **Distributor** |
| **Supervisory Distributor** |
| **3 Ways to Earn Income** |
| **Commission** |

**I.** Retail Profits
**II.** Organization Development Commissions (Paid Weekly)
**III.** 8% Global Bonus
• In additional to the above, we also have Marketing and Promotional Awards periodically

### ● Retail Profits

*Distributors are eligible to purchase company products at wholesale costs.*
*Savings = profit not lost*

1. Support your own business – Do not give competitors the satisfaction of earning profit off of you.
2. Generate business volume through personal use (self, family and relatives).
3. Generate retail profit through sales of products:

   a. Distributors have the flexibility to sell at the suggested retail prices
   b. Ways to establish clientele to promote sales

      • Personal website
      • Business card / promotional literature
      • Referrals
      • Word-of Mouth / sharing personal experience (a.k.a. "Soft" sale)

### ● Organization Development Commissions (Paid Weekly)

Amkey's well-conceptualized binary business development system offers qualifying distributors the opportunity to earn commission on a weekly basis.

1. A distributor becomes qualified when he/she sponsors 2 persons and places them on either side of the business centre.
2. The 2 new distributors will then assume the roles as leads of the right and left rganizations.
3. Each product is assigned a Business Volume (BV) i.e. Biolin = 50 BV, BV's are generated through purchases and sales. For every 100 BV accumulated on your Left & Right side, you are entitled to receive a $25 commission check.
4. Commission are paid weekly, US$ 50,000 per week is the Maximum pay out per Centre.
5. BVs that have not been used to calculate in your most recent commission will remain in the system and wait for the next pay-out period. Therefore, you will never lose any BV's and to worry about your efforts being flushed.

#### Special features:

1. No time restrictions and deadlines to meet. Work at your own pace and comfort level. You decide how much time and effort to allocate to your business without jeopardizing your priorities. Work Part Time – Work Full Time, it is your choice.
2. No geographic restrictions. Amkey is a technologically advanced internet

based business that gives you the freedom to work in the comfort of your own home.
3. How would you like to have a worldwide income? We have the vehicle for you to expand your horizons.

## Global Bonus

8% Global Bonus

1. Every Qualified Distributor is eligible to enter the 100,000 people matrix.
2. 8% of the company's monthly autoship revenue worldwide is shared with all the qualified Distributors. This solves the problem of lost income caused by one side of your organization being more developed than the other.

*The Formula for Global Bonus is:*

The formula is:

$$\text{Global Bonus} = \frac{\text{GROUP PERSONAL VOLUME (GPV)}}{\text{TOTAL COMPANY AUTOSHIP BV (GAV)}} \times 8\% \times \text{Rank} \qquad (\text{BV= Business Volume})$$

**(RANK)** = 1, 2 or 3% depending on your level of participation as defined below

**(GPV)** is your organization's Total Accumulated Autoship BV of yours both legs for the **month**

- This bonus is paid monthly. All your down-line distributors, whether personally sponsored by you or not, are included.
- It is paid on the 15th of every month.
- The computation for this bonus includes up to 100,000 distributors arranged in the order of the time that they joined Amkey.
- Depending on the level of your participation - 1, 2, or 3% of your total accumulated autoship BV of the month is used in this calculation.
- 8% of the company's monthly global autoship business revenue will be set aside and paid as Global Bonuses to all qualified distributors

### Levels of Participation

The Global Bonus Participation Levels.

- Qualified Distributor - 1%
- Qualified Manager - 2%
- Qualified Senior Manager - 3%

1. **Qualified distributor:**
   Joined Amkey with 100 BV products purchase; sponsored 2 distributors, one on each side of your organizations; and participates in 50 BV or more monthly order auto-ship for 3 consecutive months.
2. **Manager:**
   Joined Amkey with 100 BV product purchase, sponsored 5 distributors, and participates in 100 BV or above monthly order auto-ship for 3 consecutive months.
3. **Senior Manager:**
   Joined Amkey with 100 BV product purchase, developed 3 managers from your personally sponsored distributors, and participates in 150 BV or above monthly order auto-ship for 3 consecutive months.

**Note 1:**
The Company's Global Volume is the Company's monthly global BV starting from the month after 120 days of a distributor joining Amkey.
All your down-line distributors, regardless of status, can become part of your "100,000 organization pool" after 120 days of joining.

**Note 2:**
Amkey limits total bonus paid out to 65% of total company revenue. This percentage is based on each country's business standards and will vary accordingly.

**EXHIBIT D**

 **Independent Distributor Application**

**Independent Distributor Information:**      **Language:** _____

| Name (First) | (Middle) | (Last) | | Social Security No. |

**Mailing Address**

| City | State | Zip Code | Country |

**Shipping Address:** *(If different from your mailing address)*

**Address**

| City | State | Zip Code | Country |

| Home Phone | Business Phone/Cell Phone | Fax Number |

**Email Address**

**Shipping Method**      □ UPS Ground            □ Pick up at Irwindale Headquarters Office

**Business Information:** *(Please select one)*
_____ One Business Development Center      _____ Three Business Development Centers

Backoffice Name – Center One: _____      Password: _____

Personal Website: http://www. Amkey.net/_____
□ US Distributor            □ Foreign Distributor doing business in US (must submit W-8 form)

**Sponsor Information:**

| Sponsor Name | Amkey ID No. |

| Contact Phone Number | Email Address |

**Payment Method:**
**1. Credit Card** (Recommended)      □ Visa   □ MasterCard   □ American Express   □ Discover
Name on card: _____      Credit Card # _____
Exp. Date: _____ Security Code _____
Signature: _____

1.  **Money Order/Cashiers Check/Personal Check**
Payable to: Amkey Inc., and sent to:12801 Schabarum Ave., Irwindale, CA 91706 U.S.A.
*(Distributorship will be effective immediately after the check has cleared from personal bank account.  Any check returned for insufficient funds will be subject to a penalty fee of $25.00)."*

**Taxpayer Information:**

| Name (First) | (Middle) | (Last) | | Social Security No. |

Under penalty of perjury, I certify that:  The number above is my correct Taxpayer ID number.  Any incorrect or misleading information regarding taxpayer ID is my full responsibility.  You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of the transaction.  Please refer to the company's Policies and Procedures online.  I agree to the above indicated information and I acknowledge that I have read, understand and agree to the terms set forth in the company's Policies and Procedures online.

| Signature | Date |

9/3/2006

EXHIBIT E



MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat    Sign Out    Web Search: | G

Mail Hotmail    Today | Mail | Calendar | Contacts

boblee_254@hotmail.com  Messenger: **Failed** ▾

Reply | Reply All | Forward | ✕ Delete | Junk | Put in Folder ▾ | Print View | Save Address

| From : | <info@amkey.net> | ▲ \| ▼ \| ✕ \| Amkey \| Inbox |
|---|---|---|
| Sent : | Friday, December 3, 2004 7:22 AM | |
| To : | <boblee_254@hotmail.com> | |
| Subject : | Welcome to Amkey, Your Order ID:289150,歡迎加入Amkey！ | |

Dear Lee Robert K
Welcome! you've successfully become an Amkey member! we'll try our best
to send out your products as soon as possible. Hope you may enjoy the
great
career opportunity Amkey presents to you!

您好！歡迎您加入美國安旗公司,祝賀您已成為美國安旗公司的會員.您的會員號為:
公司會儘快將您所訂購的產品寄發給您。
安旗公司祝您安旗事業順利.

Amkey Inc.
12/3/2004

▲ | ▼ | ✕ | Amkey | Inbox

**Get the latest updates from MSN**

**MSN Home** | **My MSN** | **Hotmail** | **Search** | **Shopping** | **Money** | **People & Chat**

© 2006 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy



首頁     組織家譜     訂貨和獎金     個人資料     公司訊息     退出

**經銷商基本帳單資料和交貨地址**

請正確修改以下基本帳單資料, 以便將您的獎金能正確郵寄到您的地址上, 如果要修改社會安全號或報稅號, 必須與公司聯繫. 所有粗體字部份必須填寫.

獎金支票上的名字和報稅號

獎金支票上的姓名                          Mei Mei International Inc.

社安號或報稅號                            20-265XXXX

基本帳單地址 (也是獎金郵寄地址)

個人支援網站顯示名稱                       Mei Mei International, Inc.

通訊地址 (contact address)               428 N. New Ave., #F

街道地址 2

街道地址 3

市/州(省)/郵遞區號
(City / State (provinces) / zip)        Monterey Park   CA   91755
國家 country                             美國  U.S.A

電話號碼                                 626-675-1186

工作電話

手機                                    626-675-1186

傳真號碼

電子郵件地址                             akblanchefeng@yahoo.com

公司資料(如果是公司加入)

公司名稱
Company Name                            Mei Mei international, Inc.
公司報稅號
Tax ID                                  20-2654026
公司地址

澳洲寄貨代碼                                        *如果寄貨到澳洲必須填寫

使用語言設定

預設語言                                 Chinese Traditional

取消     送出

首頁 | 產品介紹 | 制度 | 加入我們 | 會員專頁 | 公司簡介 | 新聞 | 會員培訓 | 問題解答 | 聯繫我們 | 客戶服務



首頁　　組織家譜　　訂貨和獎金　　個人資料　　公司訊息　　退出

歡迎 Mei Mei International, Inc. (200435)　IP:66.18.136.48

設定支票付款點這裡　　重要通知　　產品價目表　　查看公司內部資料　　網路培訓中心

□ 重要資料

推薦合格狀態:　　　　　合格　approved

是否在合格週期內:　　　* 持續合格 (自動訂貨未設定, 請在 12/4/2005之前設定！) 按這裡設定,修改自動訂貨

目前等級:　　　　　　　主管級經銷商　Gener manager distributor
Current position
雙軌制營業額累計:　　　16680 / 34205

直接推薦人數(左/右):　　8/7

十萬人全球分紅人數:　　302　　　　　　　　> Auto order & payment

合格週期,訂單狀態:

| 週期 | 訂單狀態 (如果您有未付訂單,請立即付款,否則獎金不能發放) | |
|---|---|---|
| 11/7/2005-12/4/2005 | 自動訂貨訂單:786093: 11/8/2005 /未付款 /未交貨 | NOT PAID / NOT SHIPPED! |
| 10/10/2005-11/6/2005 | 自動訂貨訂單:782303: 10/11/2005 /已付款(周期合格) /已交貨 | PAID / SHIPPED |
| 9/12/2005-10/9/2005 | 自動訂貨訂單:713676: 9/13/2005 /已付款(周期合格) /已交貨 | |
| 8/15/2005-9/11/2005 | 自動訂貨訂單:707969: 8/16/2005 /已付款(周期合格) /已交貨 | |
| 7/18/2005-8/14/2005 | 自動訂貨訂單:655434: 7/19/2005 /已付款(周期合格) /已交貨 | |
| 6/20/2005-7/17/2005 | 自動訂貨訂單:606451: 6/21/2005 /已付款(周期合格) /已交貨 | |
| 5/23/2005-6/19/2005 | 自動訂貨訂單:495893: 5/24/2005 /已付款(周期合格) /已交貨 | |
| 4/25/2005-5/22/2005 | 自動訂貨訂單:493202: 4/26/2005 /已付款(周期合格) /已交貨 | |
| 3/28/2005-4/24/2005 | 自動訂貨訂單:438640: 3/29/2005 /已付款(周期合格) /已交貨 | |
| 2/28/2005-3/27/2005 | 自動訂貨訂單:353029: 3/1/2005 /已付款(周期合格) /已交貨 | |
| 1/31/2005-2/27/2005 | 自動訂貨訂單:294357: 2/1/2005 /已付款(周期合格) /已交貨 | |
| 1/3/2005-1/30/2005 | 延期訂單:294356: 1/5/2005 /已付款(周期合格) /已交貨 | |

首頁 | 產品介紹 | 制度 | 加入我們 | 會員專頁 | 公司簡介 | 新聞 | 會員培訓 | 問題解答 | 聯繫我們 | 客戶服務

 

首頁　　組織家譜　　訂貨和獎金　　個人資料　　公司訊息　　退出

Page 1 of 1

| 訂單號碼 | 直銷商編號 | 狀態 | 訂單日期 | 收件人姓名 | 訂單總計 | 訂單詳 |
|---|---|---|---|---|---|---|
| 786093 | 200435 | 未付款!–() 未交貨 (已退貨) | 11/8/2005 | Blanche Feng | 86.59 | [ |
| 782303 | 200435 | 已付款–()已交貨 | 10/11/2005 | Blanche Feng | 86.59 | [ |
| 713676 | 200435 | 已付款–()已交貨 | 9/13/2005 | | 0 | [ |
| 707969 | 200435 | 已付款–()已交貨 | 8/16/2005 | Blanche Feng | 86.59 | [ |
| 655434 | 200435 | 已付款–()已交貨 | 7/19/2005 | | 0 | [ |
| 606451 | 200435 | 已付款–()已交貨 | 6/21/2005 | | 0 | [ |
| 495893 | 200435 | 已付款–()已交貨 | 5/24/2005 | | 0 | [ |
| 493202 | 200435 | 已付款–()已交貨 | 4/26/2005 | Blanche Feng | 86.59 | [ |
| 438640 | 200435 | 已付款–()已交貨 | 3/29/2005 | | 0 | [ |
| 353029 | 200435 | 已付款–()已交貨 | 3/1/2005 | | 0 | [ |
| 294357 | 200435 | 已付款–()已交貨 | 2/1/2005 | | 0 | [ |
| 294356 | 200435 | 已付款–()已交貨 優惠延期! | 1/5/2005 | Blanche Feng | 0 | [ |
| 290508 | 200435 200436 200437 | 已付款–()已交貨 | 12/6/2004 | Blanche Feng | 577.68 | [ |

13 總計 訂單 依照 10/13/2005  6:27:54 PM

首頁 | 產品介紹 | 制度 | 加入我們 | 會員專頁 | 公司簡介 | 新聞 | 會員培訓 | 問題解答 | 聯繫我們 | 客戶服務



Yahoo! My Yahoo! Mail Make Yahoo! your home page

Search the Web Search

YAHOO! MAIL Welcome, **akblanchefeng** [Sign Out, My Account]

Mail Home - Mail Tutorials - Help

YAHOO! PREMIUM FEATURES
sbc YAHOO! DSL
DSL Internet $14.95* mo.
25 times faster. Cheaper than dial-up.
SIGN

**Mail** **Addresses** **Calendar** **Notepad** **What's New - Mail For Mobile - Upgrades - Options**

Check Mail | Compose | Search Mail | Search the Web

Get VONAGE & get 30 days FREE!

Previous | Next | Back to Messages Printable View - Full Headers

Delete | Reply | Forward | Spam | Move...

**Folders** [Add - Edit]

**Inbox (1)**
Draft
Sent
Bulk [Empty]
Trash [Empty]

Play Magic Ball 2 on Y! Games

This message is not flagged. [ Flag Message - Mark as Unread ]

**From:** info@amkey.net Add to Address Book Add Mobile Alert

**To:** akblanchefeng@yahoo.com

**Subject:** Amkey.net Customer information

**Date:** Thu, 13 Oct 2005 01:29:03 -0700

Customers information!
Dear, Mei Mei International Inc.
Your Amkey information. Please write down the information below for your
password.
直銷商編號:200435
個人資源网站密碼：:123123123
直銷商個人再生網站名稱:http://www.amkey.net/bfeng

Delete | Reply | Forward | Spam | Move...

Previous | Next | Back to Messages Save Message Text

Check Mail | Compose | Search Mail | Search the Web

Copyright © 1994-2005 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines - Ad Feedback
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

**EXHIBIT G**

Home| Language| Company| Compensation| Products| Backoffices| Services

Member ID          Password          Login

## COMPENSATION

- ➤ Compensation Plan
- ➤ Distributor
- ➤ Supervisory Distributor
- ➤ Three Ways to Earn Income
- ➤ Active and Commision

### State of the Art Compensation Plan

**Distributor**

1. You get an online office and your own personal website for only a $69.99 per year management fee. You will receive support from our online back office to manage your own account. This is a full function online support system that helps you in direct sales with customers. -- Get Started!

2. Order 100BV of Amkey products for personal use and to share with others. Help yourself and others with any health problem you may have. -- Take Action!

Once you become a distributor, you can have your own business center and you are now able to develop your left and right side organizations. (See the following chart)



**Left Team**          **Right Team**

**Characteristics:**

1) With low entry requirements and without pressure, everyone can participate.

2) With a complete product line of high value products that you and everyone else can use, it is easy to develop your organization.

**EXHIBIT H**

 

 

### State of the Art Compensation Plan

**Compensation Plan**

**Distributor**

**Supervisory Distributor**

**3 Ways to Earn Income**

**Commission**

Amkey's unique compensation plan is not only simple but personalized. To create this plan, senior professionals with many years of experience in direct marketing invested considerable time and effort analyzing the various methods used by other companies. Called "Binary Expansion Single Track," or "B.E.S.T." for short, this plan offers all those who are interested an excellent opportunity to start their own business.

**Special Characteristics of the Plan:**

1. Reasonable retail profit: Earn 25-50%.
2. Quick and lucrative multiple bonuses: Bonuses paid weekly and monthly.
3. Easy "Development Bonus": Earn $25 every time you have accumulated 100 BV each to your left and right organization. This bonus is paid weekly.
4. Guaranteed Global Bonus: Every qualified distributor participates in the Global bonus even if only one side of your organization has been developed. This bonus is paid monthly.
5. Unlimited worldwide pay levels: Group volume accumulates to infinite levels. As long as you maintain a minimal qualification, your group volume is preserved indefinitely. There is no inventory required while you are expanding your business worldwide.
6. Maximum payout: 65% of the company's worldwide business revenue goes to its distributors.
7. Straightforward and fair system: Achievable and tangible for everyone.
8. Simple to join, work part or full time. Qualify by:
   (1) purchasing 100BV of product, (2) introducing two people, one each on the left and right side of your organization, and (3) establishing a 50 BV autoship account for 3 consecutive qualifying periods.

Join Amkey. By choosing Amkey as your partner, you will enjoy an unprecedented compensation plan to assist you in realizing your dream.

**Note: BV = Business volume**

EXHIBIT I

## AMKEY, Inc. Statement of Policies and Procedures

Code of Ethics

As a Independent Distributor (hereinafter "Distributor") of AMKEY, Inc. (hereinafter "AMKEY" or "the Company") I hereby promise and agree that:

1. I will be honest and forthright in all my transactions while acting as a Distributor of AMKEY, and will perform all activities in a manner that will enhance my reputation and the reputation of AMKEY.

2. I will not engage in any illegal or deceptive practice.

3. I will respect the time and privacy of everyone I contact to become retail customers or Distributors of AMKEY. I will be courteous and respectful to everyone contacted in the course of my AMKEY business. I recognize AMKEY's officers have strong personal convictions regarding the ethical conduct of all AMKEY Distributors.

4. I will fulfill my leadership responsibilities as a Sponsor, including training and providing support to the Distributors in my organization. I will provide ongoing support to my organization, acknowledging that the people I sponsor will have an increased opportunity for success in AMKEY when they receive ongoing training and support.

5. I will make no income claims or representations regarding the AMKEY compensation plan, except those in AMKEY literature. I acknowledge that an AMKEY Distributor's success depends on many variables, such as amount of time and effort committed to his or her business and his or her organizational ability.

6. I will not make claims for AMKEY products, services or its income opportunity except as published in official AMKEY literature. I will remember that even my personal experience of benefits received from AMKEY products, services or its income opportunity may be interpreted as AMKEY claims if I use those experiences as a sales device. I may never say, suggest or imply that AMKEY products are for the treatment or cure of any disease.

7. I will always honor AMKEY's 100 percent satisfaction, money-back guarantee when dealing with my retail customers.

8. I understand and agree that I am solely responsible for all financial and legal obligations incurred by me in the course of my business as a Distributor of AMKEY products and services, including self-employment taxes, income taxes, sales taxes, license fees, etc. I understand that I am an independent contractor for all federal and state tax purposes.

9. I will compete aggressively but fairly, and I will respect the participants of other network marketing opportunities. I will not solicit from the distributor lists or customer lists of other network marketing companies, nor focus sales or recruiting efforts solely on the customers or distributors of any one other company. I will not use sales materials that are regarded as proprietary by other companies.

### Distributor Statement of Policies and Procedures

1. Becoming a Distributor. An applicant becomes a Distributor of AMKEY when both of the following requirements are completed:

a. The applicant pays $69.99 annual management fee for maintenance of Web Pages; and
b. The applicant's completed Application with payment of the previously mentioned fee has been received and accepted by the AMKEY corporate office.

AMKEY reserves the right to decline any Distributor Application, including the application

of any person who has had a financial interest of any kind in any AMKEY Distributorship under a different enroller in the preceding six months, except that gender, national origin, race, religion or political views will never be given consideration.

2. Legal age. Distributors must be of legal age in the state of their residence.

3. Distributor rights. All Distributors are authorized to sell AMKEY products, and to participate in the AMKEY compensation plan. All Distributors may enroll new Distributors.

4. No purchase required. No person is required to purchase any AMKEY products or services, beyond the $69.99 annual management fee for maintenance of Web Pages. Distributors will be given the opportunity to choose their own user name and password.

5. Married couples. Married couples who both wish to participate must share a single Distributorship. Distributors who marry must maintain separate Distributor status, unless one is the direct sponsor of the other, or they have the same sponsor, in which case their Distributorships may be consolidated. When a couple sharing a Distributorship divorces or separates, AMKEY will continue to pay commissions and bonuses as before the divorce or separation until it receives written notice, signed by both parties or by a court decree specifying how future commissions and bonuses should be paid.

6. Simultaneous interests. Distributors and their spouses or dependents may not have a financial interest in more than one Distributorship without the written consent of AMKEY. For example, neither a shareholder of a corporation that is an AMKEY Distributor, nor a partner of a partnership that is an AMKEY Distributor may become an AMKEY Distributor individually.

7. Corporate, partnership and trust documents. Corporations, Partnerships and Trusts may apply to become Distributors of AMKEY only when the Distributor Application and Agreement is accompanied by copies of:

a) Articles of incorporation, partnership agreement or trust documents as filed with the State.
b) Corporate applicants must disclose a complete list of all directors, officers, and shareholders involved in the corporation. Partnerships must disclose all general and limited partners. Trusts must disclose the trustee and beneficiary.
c) Proof must be provided of a Federal ID Number and a copy of the Annual Certification from the Secretary of State of the State of Trust, Partnership Registration or Incorporation.
d) Shareholders, partners, beneficiaries and trustees, directors and officers, as applicable, agree to remain personally liable to AMKEY and bound by its rules and regulations.

8. Fictitious and assumed names prohibited. A person or entity may not apply as a Distributor using a fictitious or assumed name.

9. Independent Contractor status. All Distributors are independent contractors with AMKEY, and not franchisees, joint ventures, partners, employees, or agents of AMKEY. Distributors are strictly prohibited from stating or implying, whether orally or in writing, that they are franchisees, joint ventures, partners, employees, or agents of AMKEY. Distributors may not bind AMKEY to any obligation.

10. Annual renewal. Distributors must renew their Distributorship annually. The annual renewal fee is due on the anniversary of a Distributor's application to AMKEY. Although the responsibility for renewing belongs to each Distributor, AMKEY will remind Distributors when their renewal is due. Any Distributor not renewing by the renewal date shall be deemed to have voluntarily terminated their Distributorship, and thereby forfeit the Distributorship, all sponsorship rights, position earned, and any future compensation.

11. Indemnity. Distributors agree to indemnify and hold harmless AMKEY, its shareholders, employees, agents, and successors in interest from and against any claim, demand, liability, loss, cost, or expense, including, but not limited to, attorney's fees arising or alleged to arise in connection with the Distributorship, and any matter related to the Distributor's

performance under the Distributor Agreement.

12. Taxes. Distributors will be treated as independent contractors for all federal or state tax purposes. As independent contractors, Distributors will not be treated as employees, franchisees. joint ventures. partners. employees. or agents with respect to the Internal Revenue Code, Social Security Act, Federal Unemployment Act. state unemployment acts. or any other federal. state. or local statue. ordinance. rule, or regulation.

13. Legal compliance. All Distributors shall comply with all federal and state statutes and regulations and local ordinances and regulations concerning the operation of their businesses. All Distributors are responsible for their own managerial decisions and expenditures. including all estimated income and self-employment taxes. At the end of each calendar year, AMKEY will issue an IRS Form 1099-MISC for non-employee compensation for Distributors as required by law.

14. Distributor identification number. All Distributors will be required to provide a Social Security number or Federal ID number. and AMKEY will use this number until such time as a Distributor identification number is assigned and for all government reporting purposes. While respecting the rights of the "un-numbered," AMKEY chooses, as a right of contract, to only enter into agreements with those who are willing to provide a taxpayer identification number. The Distributor identification number must be indicated by the Distributor on all correspondence with AMKEY, including paperwork for enrolling, product ordering, etc.

15. Other products and services. Distributors are not restricted from selling the non-competing products and services of other companies. However, promotion of products. services or income opportunities of other direct selling companies. to AMKEY customers or Distributors, is strictly prohibited. Any Distributor found in violation of this rule risks suspension or termination of their Distributorship.

16. No exclusive territories. There are no exclusive territories for marketing or enrolling purposes. nor shall any Distributor imply or state that he or she does have an exclusive territory. There are no geographical limitations (within the U.S. and its possessions) on Distributor enrolling.

17. Enrolling not compensated. AMKEY Distributors may enroll other Distributors into the AMKEY program. However, Distributors are compensated only on business volume. and never for enrolling additional participants into the program.

18. Multiple applications. If one applicant submits multiple Applications, only the first completed form to be received by AMKEY will be accepted. AMKEY reserves the right to resolve such disputes.

19. Obligations of Enrollers. Distributors who choose to enroll are required to assure the adequate training of their enrolled Distributors. "Adequate training" includes (but is not limited to) education regarding AMKEY rules and regulations. compensation plan, product information. sound business practices. sales strategies. and ethical behavior. An enroller must maintain an ongoing. professional leadership association with Distributors in his/her organization and must fulfill the obligation of performing as a bona fide sales mentor or sales trainer in the sale or delivery of products to the ultimate consumer. Examples of such supervision may include. but are not limited to: newsletters. written correspondence, personal meetings. telephone contact. voice mail, electronic mail, training sessions. accompanying individuals to AMKEY training. and sharing genealogy information with those enrolled. Distributors should be able to provide evidence to AMKEY upon request of ongoing fulfillment of enroller responsibilities. Enrollers. in their leadership role, are to notify the company in writing of violations of these provisions of which they become aware.

20. Transferring sponsorship. A transfer request. without group. will be considered with the notarized signatures of consent from the five immediate uplines. A transfer request, with group. will be considered with the notarized signatures of consent from the five immediate uplines. and the notarized signatures of consent of each downline wishing to be included in

the transfer. All transfers of sponsorship require the final approval of AMKEY, whose
decision will take into account the overall good of the AMKEY. An administrative fee may
be charged for changing the corporate records.

21. All applications for voluntary termination must be received through one of the following
options: (1)fax: 323-268-8588: (2)Email: info@amkley.net; or (3)technical support in back
office. We do NOT accept any oral application.

Rules and Regulations for cancellation of distributorship

Any qualified distributor who likes to cancel distributorship must forward a written
application with signature via fax to (323)780-0188.Amkey.Inc. No other forms will be
accepted.

1. If you send your cancellation notice within sixty(60) days(effective date will be from first
day when you signed in as Amkey distributor) and the Company is in receipt of your written
application plus returned package intact.within thirty (30) days the Company will apply the
following rules and regulations:
(1) 10% deduction for handling fees plus deduction for bonus already distributed and
shipping cost.
(2) Deduction for website fees on prorate basis.(will be calculated $6.00/per month,If less
than a month, it will be cinsidered a month),the balance will be refuned.

2. If you send your cancellation notice over sixty(60) days but within one year,The company
is in receipt of your written application plus returned package intact,within thirty (30)days
the Company will apply the following rules and regulations:

(1) 60% deduction for handling fees plus other deductions for bonus already distributed and
shipping cost.

(2) Deduction for website fees on prorate basis(will be calculated $6.00/per month,if less
than month.it will be considered a month).The balance will be refunded.

22. Involuntary termination. A Distributor may be terminated or suspended for violating any
of the terms of this Agreement. AMKEY may suspend the Distributorship of a violating
Distributor upon serving notice of cause, citing evidence of the violation. Should no response
be provided by the Distributor within 15 days. termination will become effective upon final
decision of AMKEY. Notice of the decision will be sent by certified mail to the violating
Distributor's address of record. In instances where applicable state law is inconsistent with
the foregoing, such procedure shall be automatically amended for compliance. An
involuntarily terminated Distributor may not make application to AMKEY for a period of
one year following the effective date of termination.
23. Appeals An involuntarily terminated Distributor may appeal the termination by
submitting a letter of appeal. stating the grounds of the appeal. This letter must be sent U. S.
Mail or private delivery service RETURN RECEIPT REQUESTED and must be received by
AMKEY within 15 days of the date of mailing of the Company's termination notice. If the
Company has not received a letter of appeal by that deadline. the involuntary termination
shall automatically become final.
If a Distributor files a timely appeal. AMKEY will, in its sole discretion. review and
reconsider the termination and notify the Distributor of its decision. The decision of the

Company shall be final and subject to no further review. If the appeal is denied, the termination shall remain in effect as of the date of the Company's original termination notice.
24. Effect of suspension. Should AMKEY deem it necessary to suspend a Distributor, such suspension could mean that the Distributor may not have the right to represent themselves as a Distributor of AMKEY and that any commissions, royalty overrides, or bonuses due will be held by AMKEY pending resolution. At the discretion of the Company, products and services may be purchased by a suspended Distributor at wholesale. However, should termination result, product and services may be purchased only from another AMKEY Distributor.
25. Effect of termination. In the event a Distributor is terminated, effective with such termination the Distributor can no longer sell AMKEY products and services, or enroll other Distributors. The Distributor also loses all rights to commissions, bonuses, and all other benefits.
26. Limits on transferability or sale A Distributor may sell, assign, or transfer his or her Distributorship to a non-AMKEY Distributor, but first must grant the immediate sponsor a right of first refusal. No sale, assignment, or transfer of any Distributorship shall be effective without the prior written approval of AMKEY whose approval will not be unreasonably withheld. If it is determined in the Company's sole discretion that the Distributorship was transferred in an effort to circumvent compliance with this Agreement, the transfer shall be declared null and void, and the Distributor entity shall revert back to the transferring Distributor, who shall be treated as if the transfer had never occurred from the reversion day forward. An administrative fee may be charged for changing the corporate records.
27. Vendor relationships. No Distributor shall contact, directly or indirectly, or speak to or communicate with any representative of any supplier or manufacturer of AMKEY, except as arranged by AMKEY. Violation of this rule may result in termination of Distributor benefits and possible claims for damages if the vendor relationship is compromised by the Distributor contact.
28. Confidentiality Agreement. Information contained in any genealogy or downline report provided to a Distributor by AMKEY is proprietary and confidential to AMKEY, and is transmitted to the Distributor in strictest confidence. The Distributor agrees that he or she will not disclose any such information to any third party directly or indirectly, nor use the information to compete with AMKEY or for any purpose other than promoting the AMKEY income opportunity. The Distributor and AMKEY agree that, but for this agreement of confidentiality and non-disclosure, AMKEY would not provide the information to the Distributor. Any Distributor who is found to be in violation of this rule risks suspension or termination. For a resigning or terminated Distributor, this provision extends for an additional year following termination. AMKEY reserves the right to seek damages to the fullest extent of the law.
29. Succession. Upon the death of a Distributor, the Distributorship shall pass by will or intestate succession, as provided by law. AMKEY will require the successor in interest to sign and be bound by the then current Distributor Agreement. The successor shall then be entitled to all the rights and subject to all the obligations, just as any other AMKEY Distributor.
30. Trademarks. The name AMKEY and the names of all AMKEY products and services are the registered or unregistered trademarks of and owned by AMKEY. Only AMKEY is authorized to produce and market products and literature under these trademarks. Use of the AMKEY name on any item not produced or authorized by AMKEY is prohibited.
31. Imprinted checks. AMKEY Distributors are not permitted to use the AMKEY trade name or any of its trademarks on their business or personal checking accounts. However, Distributors may imprint their AMKEY business checks as being an "Independent Distributor of AMKEY products."

32. Yellow and white page listing. Distributors are not permitted to use the AMKEY trade name in advertising their telephone and fax numbers in the white or yellow page sections of the telephone book.

33. Imprinted business cards or letterheads. AMKEY Distributors are not permitted to incorporate into their own business card or letterhead graphics any AMKEY trade name or trademarks. Only the approved AMKEY graphics version and wording are permitted. and letterhead must be ordered either from AMKEY directly or from an AMKEY approved source.

34. Company literature. Only official AMKEY literature may be used in presenting AMKEY products. services and the AMKEY income opportunity. Company literature may not be duplicated or reprinted without prior written permission from AMKEY. All promotional material of any nature. including electronic, must be approved in advance and in writing by AMKEY. Distributors may download AMKEY's monthly. quarterly and annual reports for their personal use form their back office.

35. Media interviews. Distributors are prohibited from granting radio. television. newspaper, or magazine interviews, or using public appearances. public speaking engagements, or making any type of statement to the public media to publicize AMKEY, its products. services or their individual AMKEY business except with the express. written approval of AMKEY. All media contacts and inquiries must be coordinated through the approval and representation of an AMKEY Corporate Representative.

36. Internet and web site policy.

a) No Distributor may independently design a web site that uses the names, logos. or product descriptions of AMKEY without written permission from AMKEY.

b) No Distributor may use "blind" ads on the Internet making product or income opportunity representations are or can be associated with AMKEY.

c) No Distributor may under any circumstance use the Internet for the purpose of indiscriminate "bulk" or unsolicited mailing. generally known as "spamming."

d) No Distributor may violate any local, state, or federal laws regarding the Internet or any generally accepted ethical codes of Internet conduct.

37. Independent communications. Distributors. as independent contractors. are encouraged to distribute information and direction to their respective downlines. AMKEY encourages the use of newsletters. training workshops, and other organizational programs. Distributors must identify their personal communications as such. and not give the impression that such communications are the official communications of AMKEY.

38. Distributor training. Distributors are responsible for providing training to the Distributors they enroll. Training assistance is provided on the web site. Also, each Distributor receives periodic AMKEY publications. that includes ongoing training and product and services information. Further. Distributors may attend local and regional training workshop for Distributors. and participate in AMKEY-originated national training conference calls.

39. Endorsements. No endorsements of any kind, including by AMKEY officers. may be alleged. except as expressly communicated in AMKEY literature or approved in writing. AMKEY reserves the right to use statements and photographs voluntarily submitted to its corporate office from distributors and customers in its promotional material without any financial compensation. Upon signing this Agreement. each distributor agrees to the release of their voluntarily provided testimonials by AMKEY.

40. Copying prohibited. Distributors shall not copy for sale or personal use audio or video taped material detailing the AMKEY income opportunity or product or service presentations. events. or speeches. including conference calls without written permission from AMKEY. AMKEY may seek injunctive relief or damages from the violator for the unauthorized use of AMKEY copyrights. trademarks, and materials. Video or audio taping of AMKEY meetings and conferences is strictly prohibited. Still photography is allowable at the discretion of the

meeting host.

41. Telephone answering. Distributors may not answer the telephone by saying "AMKEY," or in any other manner that would lead the caller to believe that he or she has reached the corporate offices of AMKEY.

42. Repackaging prohibited. Distributors may not repackage any AMKEY products. services or materials in any way.

43. Distributor Application and Agreement. Commissions and Overrides cannot be paid until a completed Distributor Application and Agreement has been received and accepted by AMKEY. Commissions are paid ONLY on the sale of AMKEY products and services.

44. Calendar period. Commissions. overrides. and achievement awards and recognition are calculated as per the AMKEY Compensation Plan.

45. Commission payments. Consult the Compensation Plan.

46. Stockpiling prohibited. The AMKEY program depends on. and requires. retail sales to the ultimate consumer; therefore. all forms of stockpiling or product loading are discouraged. AMKEY recognizes that Distributors may wish to purchase certain products in reasonable amounts for their own use and for availability to new Distributors as they are enrolled. However. AMKEY strictly prohibits the purchase of products in unreasonable amounts solely in an attempt to qualify for advancement in the compensation plan. The placing of an order is certification the 70% of the previous orders have been sold or converted to personal and family use.

47. Sales volume qualification by order taking. The Company has adopted minimum personal and group business volume requirements. Minimum business volume requirements may also be fulfilled by taking orders from retail customers which will be fulfilled by the Company directly shipping to the retail customer.

48. Shipping costs. Distributors have the responsibility to indicate (a) method and means of shipping and (b) destination address. The methods available are stated on each order form and the prepaid costs, if selected, can be calculated by the shipping and handling cost information also provided. NOTE: Should the receiving party of any order shipped from AMKEY refuse delivery and the shipment be returned to AMKEY, the ordering Distributor's Distributor status will be made "inactive" pending resolution of the delivery refusal. Non-accepted delivery charges will be debited to the Distributor's account.

49. Damaged goods. The shipping Company is responsible for any damage that occurs after it takes physical custody of the goods. A Distributor who receives damaged goods should follow this procedure:

a) Accept delivery.

b) Before the driver leaves. document on the delivery receipt the number of boxes which seem to be damaged.

c) Save the damaged products or boxes for inspection by the shipping agent.

d) Make an appointment with the shipping Company to have the damaged goods inspected.

e) File a claim with the shipping Company.

50. Receipts and suggested retail pricing. AMKEY will provide all retail purchasers of AMKEY products with written receipts. Although AMKEY provides a suggested retail price as a guideline, Distributors may sell AMKEY products at whatever retail price they choose.

51. Sales tax. For purchases made from the Company. AMKEY collects and remits applicable state tax which may be due on the suggested selling price of those products and/or materials which are subject to tax. The applicable rate of tax due is based on the address to which the product and/or materials is shipped. Distributors who request a tax-exempt purchase for resale from AMKEY must provide the Company with a copy of their valid and current resale exemption certificate showing a resale tax number. This number must appear on all orders placed with AMKEY. The Distributor must then collect the tax from his/her retail customer and remit it to the proper state and local taxing authority. All Distributors

must pay tax to the Company on their personal purchases made for personal use and consumption.

52. Retail outlets. AMKEY products may not be sold to or in, or be displayed by any retail outlet, including, but not limited to, flea markets or swap meets, shopping mall booths or restaurants. Exceptions require prior written approval. No sales by auction are permitted.

53. Service oriented establishments. It is permissible to take orders for AMKEY products and services in businesses such as professional services offices, "by appointment" establishments or similar non-retail establishments.

54. Price changes. All AMKEY product and literature prices are subject to change without notice.

55. Retail customer returns. AMKEY offers a 100 percent unconditional money-back guarantee on products sold to all retail customers. Every AMKEY Distributor is to honor this guarantee. If a retail customer is dissatisfied with any AMKEY product for any reason, then that retail customer may return that product to the Distributor from whom it was purchased, within 30 days, for either a replacement or a full refund of the purchase price. AMKEY will replace the returned product providing the following steps and conditions are met:

a) The product is returned to AMKEY by the Distributor through whom the purchase was made.

b) The product must be received by AMKEY within ten days of the return date to the Distributor.

c) The return is accompanied by a completed and signed statement indicating:

1) A signed statement from the retail customer identifying the reason for the return.

2) A copy of the original retail sales receipt, and

3) The unused portion of the product in its original container.

4) The name, address, and telephone number of the retail customer.

d) Proper shipping carton(s) and packing materials are to be used in packaging the product(s) being returned for replacement, and the most economical means of shipping is recommended.

e) AMKEY will prepay the cost of shipping the replacement.

AMKEY will not refund to any Distributor, the purchase price of any retail customer returns and no replacement of product will be made if the conditions of this Rule are not met.

56. Quality control. AMKEY will replace, within 30 days of purchase, any product found to be defective. However, no product should be returned to AMKEY before prior approval is received. Strict compliance with the following is required:

a) A written replacement request must be submitted, stating the reason for the request and accompanied by proof of payment and a copy of the purchase order form or packing slip.

b) AMKEY will instruct the Distributor where to ship the product for inventory and verification, and will also provide the appropriate quantity of authorized product return shipping labels. Upon receipt and verification of the product, AMKEY will ship replacement product as appropriate.

NOTE: Any return received without prior approval will cause the status of that Distributor to be made "inactive." Further, there is no assurance that the product will be considered replaceable.

57. Termination returns. If the Distributor has purchased products for inventory purposes while the Distributor agreement was in effect, all unencumbered products in a resalable condition then in possession of the Distributor, which have been purchased within 12 months of cancellation, may be tendered for repurchase. The repurchase shall be at a price of not less than 90 percent of the original net cost to the participant. In addition, the Company will honor statutory buyback requirements of every jurisdiction. AMKEY will also repurchase any sales materials for a period of one year from the time of purchase providing the materials are current and in resalable condition.

a) A written return request must be submitted. and accompanied by proof of payment and a copy of the purchase order.

b) AMKEY will instruct the Distributor where to ship the product for inventory and verification, and will also provide the Distributor with the appropriate quantity of authorized product return shipping labels. Upon receipt and inspection of the return. AMKEY will process the appropriate refund for payment.

c) Distributor must pay the cost of return freight.

NOTE: Product or sales materials not in resalable condition will be returned to Distributor at the Distributor's cost.

58. Buyer's right to cancel. Federal law empowers a buyer to cancel certain sales without penalty prior to midnight of the third business day after the transaction. This rule covers retail consumer sales of $25 or more that occur away from the seller's main office. The AMKEY Sales Order form contains all legally required notices. It must be signed by the buyer and two copies must be given to the buyer on every sale. In addition, the Distributor must orally inform the buyer of the three-day right to cancel at the time the buyer signs the contract of sale or purchases the goods. With regard to products. in all cases where the customer, at his or her sole discretion. deems the Retail Customer Returns policy, stated above, more favorable, that policy shall apply and override this policy. With regard to services, at the end of the three day period as stated herein. all sales of services are final and non-returnable.

59. Distributor's responsibility. If a retail customer mails or delivers to a Distributor a valid notice of cancellation prior to midnight on the third business day after ordering or purchasing the program, service, and/or product, it must be honored by the Distributor. If the buyer has taken delivery of any goods, they must be returned with the notice in substantially as good condition as when delivered. With regard to services, the shrink-wrapped materials describing and explaining the services must be returned unopened. Within ten business days after receiving the notice. the Distributor must refund all payments made under the contract of sale.

60. Liability. To the extent permitted by law. AMKEY shall not be liable for and Distributor releases AMKEY from. and waives all claims for any loss of profits. indirect, direct, special or consequential damages or any other loss incurred or suffered by Distributor as a result of (a) the breach by Distributor of this Agreement. (b) the operation of Distributor's business, (c) any incorrect or wrong data or information provided by Distributor, or (d) the failure to provide any information or data necessary for AMKEY to operate its business, including without limitation. the enrollment and acceptance of Distributor into the income opportunity or the payment of commissions and bonuses.

61. Record-keeping. AMKEY encourages all its Distributors to keep complete and accurate records of all their business dealings. A recommended publication is IRS Publication 911 For Direct Sellers. available from any IRS Office, or the IRS web site.

62. Income claims. No income claims, income projections nor income representations may be made to prospective Distributors. Obviously, any false. deceptive or misleading claims regarding the opportunity or product/service are prohibited. Distributors occasionally represent hypothetical income figures based upon the power of network marketing as actual income projections. This is counter-productive. and prohibited. since new Distributors may be quickly disappointed if their results are not as rapid as the hypothetical model.

63. Governmental endorsement. Federal and state regulatory agencies do not approve or endorse direct selling programs. Therefore. Distributors may not represent or imply, directly or indirectly, that the AMKEY program has been approved or endorsed by any governmental agency.

64. Amendments. AMKEY reserves the right to amend this Agreement. its prices. product availability. and compensation plan as it deems appropriate. Amendments will be

communicated to all Distributors through AMKEY publications. Amendments are effective and binding on all Distributors as of the date of issuance.

65. Non-waiver provision. No failure of AMKEY to exercise any power under this Agreement or to insist upon strict compliance by a Distributor with any obligation or provision herein, and no custom or practice of the parties at variance with this Agreement, shall constitute a waiver of the Company's right to demand exact compliance with this Agreement. Waiver by the Company can only be in writing by an authorized officer of the Company.

The Company's waiver of any particular default by a Distributor shall not affect or impair the Company's rights with respect to any subsequent default, nor shall it affect in any way the rights or obligations of any other Distributor. Nor shall any delay or omission by the Company to exercise any right arising from default affect or impair the Company's rights as to that or any subsequent default.

66. Severability. If, under any applicable and binding law or rule of any applicable jurisdiction, any provision of the Agreement, including these rules and regulations, or any specification, standard or operating procedure which AMKEY has prescribed is held to be invalid or unenforceable, AMKEY shall have the right to modify the invalid or unenforceable provision, specification, standard or operating procedure or any portion thereof to the extent required to be valid and enforceable. The Distributor shall be bound by any such modification. The modification will be effective only in the jurisdiction in which it is required.

67. Jurisdiction. All disputes and claims relating to AMKEY, this Agreement, the AMKEY compensation plan, or its products, the rights and obligations of a Distributor and AMKEY, or any other claims or causes of action relating to the performance of either a Distributor or AMKEY under the Agreement or the rules and regulations, and/or a Distributor's purchase of products shall be adjudicated totally and finally in Los Angeles County, or such other location as AMKEY prescribes. Louisiana residents only: In the event of a dispute for jurisdictional purposes, a distributor shall be entitled to file an adjudicatory claim or lawsuit in the jurisdiction of Louisiana and the governing law shall be Louisiana law.

68. Limitation of damages. to the extent permitted by law, AMKEY and its affiliates, officers, directors, employees, and other representatives shall not be liable for, and the Distributor hereby releases the foregoing from and waives any claim for loss of profit, incidental, special, consequential, or exemplary damages which may arise out of any claim whatsoever relating to AMKEY's performance, non-performance, act, or omission with respect to the business relationship or other matters between the Distributor and AMKEY whether sounding in contract, tort, or strict liability. Furthermore, it is agreed that any damage to the Distributor shall not exceed, and is hereby expressly limited to, the amount of unsold AMKEY products and services owned or held by the Distributor and commissions owing.

*Lee, et al. v. Chen, et al.*

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1601 N. Sepulveda Blvd. #730, Manhattan Beach, CA 90266-5133.

I served the foregoing document described as:

**FIRST AMENDED COMPLAINT FOR:  BREACH OF CONTRACT;  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION;  NEGLIGENT MISREPRESENTATION; WIRE FRAUD IN VIOLATION OF THE "RICO" ACT; and BREACH OF FIDUCIARY DUTY**

by mail on defendants' attorneys in this action by placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid in the United States mail at Alhambra, California, addressed as follows:

> Mitsuruko Uchida, Esq.
> WELLMAN & WARREN
> 24411 Ridge Route, Suite 200
> Laguna Hills, CA 92653

and by facsimile, to Mitsuruko Uchida, Esq., (949) 580-3738. I am readily familiar with the business practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service on that same day, at Alhambra, California, in the ordinary course of business. I am aware that on motion of the party serviced, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

I declare under penalty of perjury that the above is true and correct.

Executed on September 25, 2006, at Alhambra, California.

[signed:] _____ [printed:] AILEEN TANG